Everett A. **TILLEY** and Bonita
J. Tilley, Appellants,

v.

The **FRANKLIN LIFE INSURANCE COMPANY** and **John Brooks,**
Respondents.

No. 71615.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 30, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1997.

Application for Transfer Denied
Jan. 27, 1998.

---

**4.** The Humburgs' motion to dismiss the appeal is     denied.

Mark Belz, St. Louis, for appellants.

Steven Koslovsky, Clayton, for respondents.

CRANDALL, Judge.

Plaintiffs, Everett A. Tilley and Bonita J. Tilley, appeal from the trial court's grant of summary judgment in favor of defendants, The Franklin Life Insurance Company and John Brooks, in their action for fraud, fraudulent concealment, conversion, and negligence. We reverse and remand.

Our standard of review is set forth in the oft-cited *ITT Commercial Finance Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record before the trial court consisted of insurance policies, depositions, exhibits, and affidavits. The record established that in September 1987, Everett Tilley (Tilley) and his accountant met with Gregory Ervasti, an independent insurance agent of defendant, The Franklin Life Insurance Company (Franklin), for the purpose of setting up a retirement plan for Tilley and his wife, Bonita Tilley (wife). Tilley informed Ervasti that he did not want insurance. Ervasti told Tilley that insurance was a necessary component of the retirement plan and proposed that an annual payment of $30,000.00 be applied as follows: $15,000.00 to the cost of life insurance on Tilley; $10,000.00 to be placed into a side investment account (side fund) for Tilley, with a 13 percent annual return; $3,000.00 to the cost of life insurance for his wife; and $2,000.00 into her side fund. Tilley accepted the proposal and he and his wife each filled out applications to Franklin for insurance.

In September 1987, Ervasti delivered the policies to Tilley. Tilley's policy indicated that it had a "face amount" of $1,368,767.00 and an "annual premium" of $25,000.00; his wife's policy indicated a "face amount" of $362,182.00 and an "annual premium" of $5,000.00. Each policy described itself on the front page as a "whole life" policy. When Tilley received the policies, he questioned Ervasti about the failure to mention the side funds in the policies. Ervasti assured him side funds were included.

After September 1987, Tilley received premium notices from Franklin which indicated that the premiums were being applied to pay for the insurance policies. Tilley became "uncomfortable" when none of the premium notices showed funds going into a side fund. Repeatedly during 1987 and 1988, Tilley expressed his concerns to Ervasti as well as to his accountant. Each time Ervasti assured him that he was getting the plan as proposed.

In November 1988, Tilley requested documentation from Ervasti regarding the side funds. Ervasti provided a computer printout showing that part of the premiums had been placed into side funds and how much was in the accounts. Throughout 1988 and part of 1989, Tilley continued to receive premium notices from Franklin which did not refer to any side funds. He continued to "feel uncomfortable" and spoke with Ervasti regarding his uncertainty about the side funds on numerous occasions.

In November 1989, Tilley again requested a printout of the side fund accounts from Ervasti and Ervasti agreed to send it. When

Tilley did not receive it, he contacted Franklin directly and was advised that his premium payments had been applied only to the purchase of life insurance policies and that no money had been deposited into side funds. Upon learning this, he stopped making further payments to Franklin. Franklin refused to return the premiums Tilley paid.

In June 1990, Tilley and his wife filed an action against Ervasti for fraud, which was settled in 1992. In October 1994, they brought the present action against defendants, Franklin and John Brooks, manager of Franklin's St. Louis regional office (hereinafter referred to collectively as "Franklin"). Franklin moved for summary judgment on the ground, *inter alia*, that the statute of limitations barred the Tilleys' action. The trial court granted summary judgment in favor of Franklin on all counts.[1]

In his first and second points on appeal, Tilley[2] contends the trial court erred in granting summary judgment in favor of Franklin on the basis that his action for fraud was barred by the applicable statute of limitations.[3]

■ Where the issue of the statute of limitations involves determination of when a claim accrues, summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law. *Rogers v. Illinois Cent. R. Co.*, 833 S.W.2d 426, 427 (Mo.App. E.D.1992). Tilley asserts that there was a genuine issue of material fact as to whether Franklin, through its agent Ervasti, actively concealed the fraud such that the statute did not begin to run until Tilley had actual notice of the fraud.

■ The statute of limitations for a cause of action for fraud is five years and the cause of action is "deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting fraud." Section 516.120(5),

RSMo (1994). This rule is interpreted to mean that when facts constituting fraud are not discovered within the prescribed ten years, the cause of action is deemed to accrue at the termination of this ten-year period and a plaintiff has an additional five years from the end of the ten year period to bring his action; or, in any event, a plaintiff must bring the action within fifteen years of the commission of the fraud. *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264, 273 (Mo. App.1989). If a party takes affirmative action to conceal the fraud, the statute is tolled until the fraud is discovered. *Id.*

Here, the record reveals that Ervasti, as Franklin's agent, misrepresented the nature of the insurance policies to Tilley beginning in 1987 when he delivered them and continued to misrepresent the policies through 1989 by repeatedly attesting to the fact that side funds were included in the policies. In 1988, Ervasti, as Franklin's agent, furnished Tilley with a statement purporting to show the balance in the side funds. It was only when Ervasti failed to comply with Tilley's request for another statement in 1989 that Tilley checked with Franklin and discovered that the side fund did not exist.

Thus, there was not only the alleged original fraud upon Tilley by Ervasti, as Franklin's agent, in representing that there were side funds incorporated into the insurance policies at the time of the purchase and delivery of the policies; but also the alleged continued fraud by Ervasti after Tilley purchased the policies when Ervasti repeatedly assured Tilley that the side funds existed and furnished a bogus accounting of the side funds in 1988. In light of these assurances, Tilley did not investigate further until 1989, when he discovered that he had purchased purely insurance policies. Ervasti's conduct constituted "a studied effort ever afterwards to disarm the plaintiff of suspicion, and thus preclude an investigation." *See Selle v. Wrigley*, 233 Mo.App. 43, 116 S.W.2d 217,

---

1. Although the court did not specify the basis for its judgment, the trial court cited to *Harding v. Modern Income Life Ins. Co.*, 593 S.W.2d 568 (Mo.App.1979).

2. Throughout the remainder of the opinion we refer to plaintiffs collectively as "Tilley."

3. ˙Although the trial court did not expressly state that the statute of limitations was the ground for its grant of summary judgment on Tilley's fraud claim, it can be implied because of the court's cite to *Harding.*

223 (1938). As the court stated in *Selle,* "One cannot perpetrate a fraud and then for years thereafter use fraudulent means and methods to allay suspicion, and then be in the attitude of claiming that the statute of limitations has run. To so hold would be to give such a party the advantage of his own wrong." *Id.*

■ There remained genuine issues of material fact as to whether Tilley had failed to discover the alleged fraud sooner than five years before he filed the present action and as to whether the active concealment of the alleged fraud excused him from doing so until he had actual notice of the fraud. The trial court erred in entering summary judgment in favor of Franklin on Tilley's claim for fraud. Tilley's first and second points are granted.

In his third point, Tilley challenges the trial court's reliance on the decision in *Harding,* 593 S.W.2d at 568, in determining that the statute of limitations barred the fraud action. The facts in *Harding* are that in 1966 the plaintiffs (husband and wife) purchased what the insurance agent described as "investments" with insurance as a "sideline." *Id.* at 569. They did not want insurance and thought they were receiving shares in the insurance company which entitled them to share in the profits and growth of the company. *Id.* The policies were delivered to them in 1966, but they did not read them. *Id.* at 570–571. After paying their second premium in 1967, they became suspicious because the payments were not reduced by any dividends; and they wrote a letter of inquiry to the insurance company and sent a similar letter once a year thereafter. *Id.* at 570. The insurance company never answered the letters until 1972, when it sent a letter stating that the insurance agent who sold plaintiffs the policies had "over estimated the progress of them." *Id.* at 571. The plaintiffs made a complaint to the Missouri Division of Insurance in 1973 and were informed that they had purchased purely insurance. *Id.*

The appellate court in *Harding* found the five-year statute of limitations under section 516.210 barred the plaintiffs' 1976 action for fraud. The court rejected the plaintiffs' contention that they had five years to bring their action from the date they knew or should have discovered the fraud, which they alleged was in 1973 when they discovered they had purchased only insurance. *Id.* at 572. The court noted that the plaintiffs had the insurance policies which specified exactly what they were getting in 1966, and by their own admission became suspicious in 1966. *Id.* at 573. Yet, they continued to fail to read the documents in their possession and did not file suit until 1976. *Id.* The court thus applied a constructive notice standard to the facts of *Harding* and not an actual notice standard in determining when the statute of limitations began to run.

The *Harding* case, however, is not dispositive. In *Harding,* the trial court entered judgment in favor of the defendant notwithstanding the verdict on the basis that, as a matter of law, the cause of action was barred by the statute of limitations. *Id.* The court pointed out that the plaintiffs did not fully develop the facts establishing when they discovered that there was a difference between the insurance policies they actually received and the investment in the company they thought they had received. *Id.* The court stated, "On the basis of the record as it stands, there can be no conclusion other than that the plaintiffs failed to carry their burden of showing that they had not discovered the alleged fraud sooner than five years before suit and that there were circumstances which excused them from doing so." *Id.*

In contrast, it cannot be said that Tilley did not sustain his burden of proof because the trial court's grant of summary judgment precluded him from developing the facts that Franklin, through its agent Ervasti, attempted to conceal the fraud and that the active concealment tolled the statute of limitations until the fraud was actually discovered. As stated above, there remained genuine issues of material fact as to when Tilley discovered the fraud and as to whether Franklin through Ervasti attempted to conceal the fraud. The trial court's reliance on *Harding* was therefore misplaced. Tilley's third point is granted.

In his fourth and fifth points, Tilley contends the trial court erred in entering sum-

mary judgment in favor of Franklin on his claims for conversion and for negligent hiring, negligent supervision, and negligent retention, respectively. We have reviewed the record and find that Tilley stated a cause of action on each of those claims and that summary judgment was improper. Tilley's fourth and fifth points are granted.

In his sixth point, Tilley contends the trial court erred in finding that Tilley's release of Ervasti in 1992 released Franklin as a matter of law. Section 537.060, RSMo (1994) provides that "[w]hen an agreement by release ... is given in good faith to one of two or more persons liable in tort for the same injury ..., such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide...." An employee and a vicariously liable employer are "persons liable for tort for the same injury" and therefore are subject to the statutory provision controlling partial settlement and release. *Aherron v. St. John's Mercy Medical Center*, 713 S.W.2d 498, 501 (Mo. banc 1986). The clear effect of the statute is to preclude the unintended release of a non-settling defendant. *Id.* In the present case, Tilley expressly reserved the right to bring a cause of action against parties other than Ervasti and the agreement did not release Franklin. Tilley's sixth point is granted.

The judgment of the trial court is reversed and the cause is remanded [4]

AHRENS, P.J., and KAROHL, J., concur.

---

**4.** Franklin's motion to strike Tilley's brief and dismiss the appeal for failure to comply with the time requirements of Rule 84.05(a) and for his failure to comply with the content requirements of Rule 84.04 is denied. Tilley's motion to amend his brief is granted.