Dorothy N. MALLEK,
Plaintiff/Appellant,

v.

FIRST BANC INSURORS AGENCY,
et al, Defendants/Respondents.

No. ED 88567.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 6, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 23, 2007.

Application for Transfer Denied
May 29, 2007.

Steven W. Koslovsky, Maryland Heights, MO, for appellant.

Sharon Ruth Wice, St. Louis, MO, for respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Dorothy N. Mallek (Mallek) appeals from the trial court's grant of summary judgment to First Bank, Inc. and First Brokerage America, L.L.C. (collectively referred to as "Defendants") on Mallek's Third Amended Petition for Damages alleging fraudulent misrepresentation in the sale of a life insurance policy. We reverse.[1]

*Procedural Background*

Mallek filed her original Petition for Rescission and Damages on July 19, 2005, naming as defendants First Banc Insurors Agency, Inc. and Three Cities Bancorp, Inc., d/b/a FirstBanc. Mallek filed a first amended petition on September 12, 2005, naming as defendants First Financial Mortgage of Missouri, LLC, First Banc Mortgage, LLC, First Bancshares, Inc., 2142217 Hermannhof, Inc., d/b/a First Banc Insurors, and FL13301First Title Guaranty, LLC d/b/a First Banc Insurors Agency. She dismissed First Bancshares, Inc. on December 28, 2005. On February 21, 2006, she filed a second amended petition, naming as defendants First Banks, Inc., d/b/a First Banc Insurors Agency. Finally, on April 17, 2006, Mallek filed her third amended petition, naming First Brokerage Inc.,[2] d/b/a First Banc Insurors Agency and First Banks, Inc., as defendants.

In her third amended petition, Mallek alleged as follows. After Mallek's husband died, Mallek invested the proceeds of a property sale in an annuity (Annuity), which was to pay her an annual payment

---

1. Defendant's Motion to Strike Appellant's Reply Brief and the Argument Portion of Appellant's Brief is denied.

2. In their answer to Mallek's third amended petition, defendants state that "First Brokerage, Inc., is not a Missouri corporation and that the proper name of the defendant is First Brokerage America, LLC, a Nevada limited liability company."

of $24,000 for five years. Mallek further alleged that she initially intended to deposit the annual Annuity payments into an account at FirstBanc, but an individual named Steve Johnson (Johnson) contacted her on a "cold call" and invited her to meet with him to discuss an investment idea he had for the funds she was depositing with FirstBanc.

Mallek alleged that she and her daughter, Rene Atkinson (Atkinson), met with Johnson at FirstBanc, and Johnson recommended that Mallek purchase a life insurance policy (Policy) with a face value of $185,000 from Allied Life Insurance (Allied), under which Mallek would make annual premium payments equivalent to the five anticipated Annuity payments without any additional payments thereafter. Mallek alleged that Johnson provided an illustration showing that the annual $24,000 premium would be paid for five years; thereafter, no premium would be paid but the death benefit would remain $185,000.

Mallek further alleged that, based on Johnson's representations, she purchased the Policy and began paying the annual premiums from the Annuity payments. Mallek alleged that, unbeknownst to her, and despite Johnson's express representations, additional premiums beyond the five annual $24,000 premium payments would be required to keep the Policy in force and effect. According to her allegations, Mallek did not become aware of this or Johnson's misrepresentations until Allied or its successor demanded additional premiums and gave Mallek notice that the Policy would be cancelled if the additional premiums were not paid. Mallek alleged that when she received invoices for additional premiums due on the Policy, she contacted Johnson, who advised her to ignore them, which she did.

Mallek further alleged that she was required to pay additional premiums to keep the Policy in effect so as to not lose the benefit of the premiums already paid, but that the Policy lapsed because she was unable to afford the additional premiums.

Mallek contended that Johnson made his representations concerning the Policy on the Defendants' behalf to induce her to purchase the Policy; his representations were material to her decision to purchase the Policy; his representations were false; Johnson intended that she rely upon his representations; and she was justified in relying on them. Mallek claimed she suffered damages as a direct and proximate result of the Defendants' actions, which were done with an evil motive or reckless disregard.

On May 18, 2006, First Banks and First Brokerage filed their Motion for Summary Judgment, contending that they were entitled to judgment as a matter of law because: 1) the statute of limitations barred Mallek's action; 2) her petition failed to state a cause of action because she could not support every element of fraud; and 3) she did not plead or adduce facts stating a cause of action against First Banks, Inc.

*The Parties' Acknowledged Uncontroverted Facts*

First Banks, Inc. is a Missouri corporation. First Brokerage America, LLC, is a Nevada limited liability company affiliated with First Banks, Inc., in that the two companies have common ownership.

In 1994, Mallek owned the single premium Annuity issued by United Companies Life Insurance Company. That same year, Mallek and her daughter, Atkinson, met with Johnson regarding the purchase by Mallek of an insurance policy.

Mallek purchased an insurance policy (the "Policy") in the amount of $177,000 from Allied. The Policy, issued July 16, 1994, was Number IN0202822.

Mallek arranged for an annuitized payout of the Annuity and received five payments of $24,918.60, the first payment being issued on June 9, 1995, and the final on June 9, 1999. Mallek made four payments of $24,000 to Allied on August 16, 1994, July 16, 1996, July 17, 1997, and July 16, 1998.[3]

Mallek received Annual Reports from Allied Group Insurance.

On June 8, 1999, Mallek received a payment of $24,918.60 from the Annuity, which she deposited into her account at First Bank.[4]

### The Grant of Summary Judgment

The trial court granted summary judgment to First Banks, Inc. and First Brokerage America, LLC on July 20, 2006, finding that Mallek had a duty to read the Policy when she received it in 1994, and that, had she done so, she could have discovered the alleged fraud. The trial court determined that, as the cause was filed on July 19, 2005, it was barred by the statute of limitations. It stated:

> Further, [Mallek] could have discovered the alleged fraud in December 2000, when she received notice that payment of additional premium was due. Defendant First Banks, Inc. is not a proper party defendant in the within cause and [Mallek] did not file her Third Amended Petition against Defendant First Brokerage America, LLC, the proper party defendant, until April 18, 2006, which was after the statute of limitations had run.

This appeal follows.

### Point on Appeal

In her sole point on appeal, Mallek contends the trial court erred in granting summary judgment based upon limitations because there were genuine issues of material fact concerning when she discovered, or in the exercise of reasonable diligence, should have discovered, First Banc's fraud so as to commence the running of Section 516.120(5) RSMo 2004.[5]

### Standard of Review

We review de novo the trial court's grant of summary judgment. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Whether the grant was proper is a question of law. *Id.* We view the record in the light most favorable to the party against whom judgment was entered, taking the facts set forth in affidavits and otherwise in support of the motion as true unless they are contradicted by the non-movant's response. *Id.* The party moving for summary judgment must show a right to judgment flowing from material facts about which no genuine dispute exists. *Id.* at 378. A genuine issue exists when the record contains evidence of two plausible, but contradictory, accounts of the essential facts. *Taryen Dev., Inc. v. Phillips 66 Co.*, 31 S.W.3d 95, 98 (Mo.App. E.D.2000).

### Discussion

The record, viewed in the light most favorable to Mallek, the non-movant, reveals that, in May 1993, Mallek, then 77

---

**3.** We are listing the dates as recorded in Defendants' Statement of Uncontroverted Material Facts and agreed to by Mallek; however, we note that the dates agreed to by the parties differ slightly from the dates contained elsewhere in the record.

**4.** We recognize that this date is inconsistent with the date previously stated as being the date the final Annuity payment was issued.

**5.** Subsequent statutory references are to RSMo 2004, unless otherwise indicated.

years of age, and her daughter met with Johnson at the First Bank branch in Ellisville after Johnson obtained Mallek's name through her account with the bank. Johnson wanted Mallek to invest in an insurance policy, and they discussed Mallek purchasing an insurance policy with the Annuity payments. Johnson told Mallek that the premiums would be fixed, she would make five payments of $24,000 for five years, and then she would "be through." Johnson showed Mallek and Atkinson illustrations of payments and premiums, which he explained. Mallek agreed to purchase the Policy. When Mallek purchased the Policy in May 1993, it was supposed to be worth $177,000.

Johnson did not give Mallek any documents from that meeting to take home with her. However, one of the illustrations Johnson showed to Mallek indicated that, after five annual premium payments and no other premium payments thereafter, at a 6.25% interest rate, a policy with an initial $185,000 face amount would have an account value of $196,813, a cash value of $196,813, and a death benefit of $198,781 in year 18. The illustration showed no net annual premium payments in years 6 through 18.[6]

The Statement of Policy Cost and Benefit Information prepared by Allied Life Insurance Company on July 12, 1994, for Mallek showed planned annual premium payments of $20,000 for years 1 through 6, a premium payment of $18,080.86 in year 6, a premium payment of $8,012.94 in year 7, and annual premium payments of $18,013.40 for years 8 through 18. At a guaranteed 4% interest rate, the document indicated the Policy's account and cash values at year 18 would be $304,194, and the death benefit $307,236; however, at the "current cost of insurance and the current interest rate, the Policy's account and cash values at year 18 would be $548,198, and the death benefit $553,681." The document cautioned that the actual cost of insurance and interest rates would be determined by Allied and were subject to change.

The Policy stated that the insurer would pay the death benefit when it received proof of Mallek's death prior to the Policy's maturity date, which would be the year when Mallek reached 95 years of age. The Policy indicated Mallek's annual planned premium was $24,000 and that the guaranteed coverage period was five years from the policy date.

Although Mallek read the Policy when she received it, she did not understand its language. Mallek does not recall reading the statements of Policy Cost and Benefit Information. Mallek understood that the proceeds of the Policy would be paid tax-free to her beneficiary because Johnson "said so."

On June 27, 1995, Mallek wrote a check, payable directly to Johnson, for $24,000; however, Allied's Annual Reports reflect that no premium was received from Mallek in 1995. The Annual Reports do record premium payments on August 16, 1994, July 16, 1996, July 16, 1997, and July 16, 1998.

---

6. Contributing to the confusion is the fact that the same illustration indicated that, at a minimum guaranteed interest rate of 4.00%, in year 9, a policy would have a cash benefit of $24,457 and a death benefit of $185,000. At the 4.00% rate, the illustration listed the cash and death benefits of such a policy in years 10 and following as 0. The record before us does not reveal how, or even if, this portion of the illustration was explained to Mallek. It appears, nevertheless, that the interest rates for the Policy always exceeded 4.00%; the Annual Reports indicated that the interest rates were 6.00% for the period ending July 16, 1995, 5.50% for the periods ending July 16, 1996, and July 16, 1997, and 5.25% for the periods ending July 16, 1998, and July 16, 1999.

When Mallek began receiving bills for additional premiums after the five years elapsed, she called Johnson. When she talked to him about the bills she received every year after the five years, Johnson told her, "Ignore it." They're through. You've paid the five years. On December 6, 2000, Mallek talked to Johnson again about the premiums. She continued to receive subsequent premium notices; she called Johnson again, and he told her to ignore them.

Mallek received Annual Reports regarding the Policy. The Annual Report for the period running from July 16, 1994 to July 16, 1995, stated that, using guaranteed assumptions, the Policy would "remain in force until 08–16–96 with no future premiums or to 07–16–12 if you continue your planned premiums." The Annual Report for the period running from August 15, 1998, through July 15, 1999, stated that the Policy would remain in force until 12–16–03 with no future premiums or to 7–16–12 if Mallek continued her planned premiums. A Policy Holder Statement for July 16, 1999 through July 16, 2000, stated that, if no further premiums were received, "assuming guaranteed interest rates, guaranteed cost of insurance rates and no withdrawals or changes in the specified amount, on June 16, 2005, your policy will have insufficient value to remain in force."

Ultimately, Mallek could not afford to continue making payments and the policy lapsed.

Section 516.120 contains the applicable statute of limitations for actions for fraud. According to its provisions, a cause of action for fraud must be brought within five years and the cause is "deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years of the facts constituting fraud." Section 516.120(5). Consequently, should Mallek's claim be determined to have ac-

crued when Johnson sold Mallek the Policy in 1994, her petition should have been filed on or about July 16, 1999. Here, the running of the statute of limitations depends upon when Mallek discovered or could have discovered the alleged fraud.

"Where the issue of the statute of limitations involves a determination of when a claim accrues, summary judgment cannot be granted unless the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law." *Tilley v. Franklin Life Insur. Co.*, 957 S.W.2d 349, 351 (Mo.App. E.D.1997). Given the contradictory and confusing information in the record concerning the annual planned premiums and the dates to which the Policy would remain in force, Mallek's testimony that Johnson told her that she would pay just the five annual premiums of $24,000 and "be through," and her testimony that Johnson told her to ignore the premium notices, we cannot say the evidence is so clear.

Here, there remain genuine issues of material fact as to whether Mallek discovered, or through the exercise of reasonable diligence, could have discovered, the alleged fraud sooner than five years before she filed her petition, and as to whether the alleged concealment of the alleged fraud excused her from doing so until she had actual notice of the alleged fraud. The record before us shows that Johnson contacted Mallek, an elderly woman, to discuss an investment proposal for the proceeds of Mallek's Annuity, the existence of which he learned through his connections with Mallek's bank. According to Mallek, Johnson told her that she need make only five premium payments in the amount of $24,000 to acquire a life insurance policy worth $177,000. Mallek's testimony regarding the representations made by Johnson during the meeting to induce her to buy the policy is uncontroverted.

Defendants argue that Mallek should have discovered, in the exercise of reasonable diligence, the alleged fraud when she received a copy of her insurance policy in 1994. We note that the Policy itself contains conflicting and potentially confusing information regarding its maturity date, guaranteed coverage period, and planned premiums; for example, the July 12, 1994 Statement of Policy Cost and Benefit Information provided to Mallek does not reflect the 5 planned premiums of $24,000 Mallek agreed to make, but rather premiums varying in amount from $8,012.94 to $20,000, and states that the *illustrated* values assume premiums are paid as shown and the *actual* cost of insurance and interest rates would be determined by Allied and were *subject to change* (emphasis ours). Given this conditional language and the other conflicting information contained in the Policy, we cannot agree that Mallek should have discovered the alleged fraud when she received the Policy.

Defendants also contend that Mallek should have discovered the alleged fraud when she received the Annual Reports. However, we note the Annual Reports contain dates which differ greatly as to when the policy would lapse, depending upon future events and premium payments. Thus, we conclude the language contained in those documents would not necessarily have alerted Mallek that the representations made by Johnson to induce her to buy the policy were false.

Defendants argue that Mallek failed to exercise due diligence to discover the purported fraud from 1994 through 1999. First, Defendants' assertion that Mallek had no contact with Johnson for over six years after the Policy was issued is belied by Mallek's testimony that Johnson came to her home in June of 1995 and she then wrote him a check for $24,000. Furthermore, as discussed above, the Policy and Annual Reports would not necessarily have alerted Mallek that Johnson's original representations were false.

Defendants further argue that Mallek could have discovered the alleged fraud in December 2000 when she received notice that payment of additional premium was due. Although Mallek testified that she tried to talk to Reassure America regarding the notices, that she was told that they did not handle any "paid-up" policies, and that her responsibility to pay premiums would have continued until she died, the record does not reveal when this contact took place. Mallek's uncontroverted testimony was that she contacted Johnson on December 6, 2000, and on at least one occasion after that date, and he again told her to ignore the notices. Accordingly, we conclude a genuine issue of material facts exists as to whether Defendants actively concealed the fraud such that the statute did not begin to run until Mallek had actual notice of the fraud. *See Tilley,* 957 S.W.2d at 351–52 (where insured's agent not only misrepresented existence of side funds incorporated into insurance policies at time of purchase and delivery of policies, but also repeatedly assured insured that side funds existed when questioned, genuine issues of material fact existed as to whether insured failed to discover alleged fraud sooner than five years prior to filing action and as to whether active concealment of alleged fraud excused him from doing so until he had actual notice). Here, the record, viewed in the light most favorable to Mallek, reveals that Johnson misrepresented the nature of the insurance policy's premium requirements and resulting value to Mallek when she purchased it, and, when Mallek contacted him regarding the bills she received "every year after the five years," Johnson continued to misrepresent the premium requirements with his advice to ignore the notices because she had paid the five years.

Because we find genuine issues of material fact exist as to when Mallek discovered, or in the exercise of reasonable diligence, should have discovered the alleged fraud, we conclude the trial court erred in granting summary judgment based on Section 516.120.

In their brief, Defendants assert that Mallek's Third Amended Petition naming First Brokerage America, LLC as a defendant is barred by Section 516.120 because Mallek "added" First Brokerage as a party defendant instead of "substituting" it as a party defendant. Thus, Defendants argue that Rule 55.33,[7] which provides that amended pleadings relate back to the initial pleading, does not apply. Defendants also contend First Banks, Inc. is not a proper party to the lawsuit because the summary judgment record established that First Banks had no connection with or liability for Mallek's alleged damages.

 Rule 55.33(c) allows an amended petition filed out of time to relate back to the original petition in certain situations. The claim in the amended petition must have arisen out of the conduct, transaction, or occurrence set forth in the original pleading. Rule 55.33(c). This element is clearly satisfied here. Additionally, when the amendment concerns the party against whom the claim is asserted, it will relate back only if the party to be brought in: 1) has received adequate notice so as the party will not be prejudiced in maintaining the party's defense on the merits; and 2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. *Id.* In other words, for Rule 55.33(c) to allow amended pleadings filed out of time to relate back, the plaintiff must have sued the wrong party. *Goodkin v. 8182 Maryland Assoc.*

*Ltd. P'ship,* 80 S.W.3d 484, 488 (Mo.App. E.D.2002).

The record on appeal reveals that Mallek sued the wrong party. It is obvious that Mallek sought to change the names of the defendants several times after realizing her mistake regarding the correct parties, and, given the confusion as to for whom Johnson was working, Mallek's mistake in selecting the proper party to sue is understandable.

As detailed in the procedural background, Mallek filed her original petition on July 19, 2005, naming as defendants First Banc Insurors Agency, Inc. and Three Cities Bancorp, Inc., d/b/a First-Banc. According to his deposition excerpts in the record, Johnson, who started working for a First Bank entity in 1991 and has worked for First Brokerage America, LLC, since its formation in 1998, represented himself to the public as working for First Banc Insurors Agency located at First Bank—whose Ellisville office he used to meet with Mallek. Johnson stated that First Brokerage America is "an affiliate by common ownership" of First Bank.

Evidently having been made aware that she incorrectly sued the wrong parties, Mallek's first amended petition attempted to remedy the situation, naming as defendants First Financial Mortgage of Missouri, LLC, First Banc Mortgage, LLC, First Bancshares, Inc., 2142217 Hermann-hof, Inc., d/b/a First Banc Insurors, and FL13301First Title Guaranty, LLC d/b/a First Banc Insurors Agency.

Thereafter, Mallek filed a second amended petition, naming as defendants First Banks, Inc., d/b/a First Banc Insurors Agency. Finally, in her third amended petition, Mallek named First Brokerage

**7.** All rule references are to Mo. R. Civ. P.2006, unless otherwise indicated.

Inc., d/b/a First Banc Insurors Agency and First Banks, Inc., as defendants.

Having concluded that Mallek sued the wrong parties, we now must determine whether First Banks, Inc. and First Brokerage America, L.L.C. received adequate notice so as not to be prejudiced in maintaining their defense and knew or should have known that, but for Mallek's mistake, the action would have been brought against them. Rule 55.33(c). Significantly, we first note that counsel for Defendants has represented the various entities named throughout this proceeding, so arguably, both the elements are satisfied by this circumstance alone.

However, the record contains other evidence that supports our conclusion that Defendants received adequate notice and should have known that but for Mallek's mistake, the action would have been brought against them. The parties named as defendants in Mallek's various pleadings all share some form of common ownership. According to its December 31, 2005, Form 10–K submitted with the motion for summary judgment, First Banks, Inc. is a registered bank holding company incorporated in Missouri. First Brokerage America, LLC, is a limited liability company indirectly owned by First Banks' Chairman and members of his immediate family. Contrary to Defendant's assertion, the summary judgment record does not establish that First Banks had no connection with or liability for Mallek's claimed damages. In fact, Johnson stated that he has worked for some form of a First Bank entity since 1991, and the record shows that First Bank is a subsidiary of First Banks, Inc., and that First Bank is First Banks' business segment.

Finally, Defendants claim that the trial court properly granted summary judgment for them because the record overwhelmingly established that Mallek did not and could not establish all of the necessary elements for a cause of action in fraud.

■ To establish fraud, Mallek must allege and prove: 1) a representation; 2) its falsity; 3) its materiality; 4) Johnson's knowledge of its falsity, or his ignorance of its truth; 5) Johnson's intent that it should be acted on by Mallek and in the manner reasonably contemplated; 6) Mallek's ignorance of the falsity of the representation; 7) Mallek's reliance on the representation being true; 8) her right to so rely; and 9) Mallek's consequent and proximately caused injury. *Taryen*, 31 S.W.3d at 102.

■ At the summary judgment stage, however, it is the defendants' burden to negate at least one of the elements they claim is lacking, such as providing evidence to show that Johnson's representation was not false, Mallek was not ignorant of the falsity of the alleged misrepresentation, Mallek had no right to rely on the representations, or Johnson's statements were not the proximate cause of her damages. *Id.* Defendants here have not done so; thus, questions of material fact remain as to all the required elements.

In their brief, Defendants stress that Mallek cannot prove the statements purportedly made by Johnson were false or that those statements proximately caused Mallek's damages because Allied did not receive five premium payments of $24,000 from Mallek, only four. However, Defendants failed to disprove Mallek's assertion that she made five payments. Both parties acknowledge that payments were made and received in 1994, 1996, 1997, and 1998; however, a genuine issue of material fact exists as to the purported fifth payment. Defendants emphasize that Mallek deposited her final Annuity payment into her account at First Bank without making a premium payment to Allied in 1999, to

support their contention that Mallek made only four payments. This argument, however, overlooks two key points. First, the record shows that Mallek made her first premium payment in August 1994, which was almost a year prior to the first of the five anticipated Annuity payments, so, arguably, only four of the Annuity payments would be required to make five premium payments. Second, and, we believe significantly, the record does not explain why Mallek wrote a check payable directly to Johnson for $24,000 when he visited her at her home on June 27, 1995, yet the Annual Reports reflect no premium was received from Mallek in 1995.

Defendants failed in their burden to negate at least one of the required elements; therefore, the trial court erred in entering summary judgment in favor of Defendants on Mallek's claim for fraud.

Mallek's point is granted.

## Conclusion

The judgment of the trial court is reversed and remanded for further proceedings.

ROY L. RICHTER, P.J., and KATHIANNE KNAUP CRANE, J., concur.