EMMA A. SUGENT, Appellant, v. ESTATE OF FREDERICK W. ARNOLD.— 101 S. W. (2d) 715.

Division One, February 5, 1937.

604

*Burnett, Stern & Liberman* for appellant.

*Anderson, Gilbert, Wolfort, Allen & Bierman* for respondent.

FRANK, J.—Action to recover on an alleged claim against the estate of Frederick W. Arnold, deceased.

During the lifetime of Frederick W. Arnold and on February 10, 1892, he executed to his mother, Amelia Arnold, his promissory note in the principal sum of $7000, due five years after date with interest at the rate of six per cent per annum. Amelia Arnold died in 1926. Frederick W. Arnold died on September 15, 1931. Emma Sugent, a daughter of Amelia Arnold, and a sister of Frederick W. Arnold, claims that her mother, Amelia Arnold, gave to her the $7000 note in question in 1912 or 1913. Her sister, Sadie Pfeiffer so testified. On November 24, 1931, Emma Sugent filed said note in the Probate Court of the City of St. Louis as a claim against the estate of her deceased brother, Frederick W. Arnold. The probate court disallowed the claim. On appeal to the circuit court the claim was again disallowed and claimant appealed to this court.

The defense to the claim is that the note was barred by the Statute of Limitations.

The first contention of appellant is that the endorsements of interest made on the note with the knowledge and consent of the maker of the note tolled the Statute of Limitations.

Twenty-eight separate endorsements appear on the note. Under each endorsement of interest is the signature of Amelia Arnold, the payee named in the note. The first endorsement is as follows:

"Int. received to date Feb. 10, 1893

Amelia Arnold."

Endorsements, in effect, the same as the one above quoted, appear on the note under date of February 10, for each year subsequent to 1893, to and including the year 1922.

There is no presumption that the endorsement of a payment on a promissory note was made at the time it bears date. Where the Statute of Limitations is relied on as a defense to a note, the plaintiff should not be permitted to read in evidence credits endorsed on the note without first proving when the endorsements were made, where they bear date prior to the running of the Statute of Limitations. The purpose of the rule is obvious. If the rule were otherwise it would open wide the door to fraud and afford the holder of the note an opportunity to revive a note already barred by dating an endorsement of payment thereon prior to the bar, especially where, as here, the maker of the note is dead. [Meffert v. Lawson, 289 Mo.

337, 359, 360, 233 S. W. 31, and cases cited.] Where endorsements are made on a note by the holder thereof prior to the bar of the statute, this will furnish prima facie evidence that payments were made at that time, provided it be further shown that the endorsements were in fact made on the dates which they bear. [Meffert v. Lawson, supra.] However, such prima facie showing may be overcome by positive proof that no such payment was made, and the endorsement on the note was made without the knowledge or consent of the maker of the note. [Regan v. Williams, 185 Mo. 620, 631, 84 S. W. 959.] Endorsements of payments made after the note is barred do not revive the note unless such endorsements are made at the direction of, or with the knowledge and consent of the debtor. [37 C. J. 1154; Haver Admr. v. Schwyhart, 39 Mo. App. 303, 305; Brown v. Carson, 132 Mo. App. 371, 376, 111 S. W. 1181; Wester v. Wester's Estate, 189 S. W. 608; Goddard v. Williamson's Administrator, 72 Mo. 131, 133.]

■ Respondent contends there was no evidence tending to show when the credits were endorsed on the note. Appellant contends otherwise.

Sadie A. Pfeiffer, a sister of claimant and of deceased was the only witness who testified in the case. We call attention to that part of her testimony upon which appellant relies to establish the fact that the endorsements on the note were made on the dates they bear.

"Q. Do you know of your own knowledge that the words, "Interest received to date" were written by your sister upon the occasion they were so written, and the dates were written by your sister, and the ditto marks were written by your sister, whereas the signature is that of your mother? Do you know that of your own knowledge? A. Yes, I know.

"Q. Were you present when that was done? A. I was present on some occasions but not all of them."

Testimony of the witness that she knew that the endorsements were written by her sister upon the occasion they were so written, does not tend to show upon what occasion they were written, or that they were written on the dates which they bear. Besides she testified that she was present only on some occasions. Twenty-eight separate endorsements appear on the note. She did not testify that the endorsements which were made on occasions when she was present, were made on the dates they bear. She did not testify on what or how many occasions she was present. Her evidence does not tend to show that any of the endorsements were made on the dates they bear or at any other dates which would obviate the bar of the statute.

Appellant calls attention to the evidence that Amelia Arnold was afflicted with creeping paralysis, a progressing disease, which affected her ability to write, and to the further fact that some of her later signatures when compared with the earlier ones indicate the progress of the disease. Such evidence might be a circumstance pointing to

the fact that some of the endorsements were made later than others, but it does not tend to show on what dates any of them were made, or that they were made on the dates they bear.

■ Appellant makes the further contention that even though the endorsements were made after the statute had run, such endorsements would revive the note because they were made with the knowledge and consent of the maker of the note.

We agree with appellant that payments endorsed on a note with the knowlegde and consent of the debtor after the statute has run will revive the note. But we find no evidence in the record tending to show that any of the endorsements were made with the knowledge and consent of the maker of the note. The evidence upon which appellant relies to support this contention is the following testimony from the only witness who testified in the case.

"Q. Did your brother Fred ever tell your mother anything about this note? A. He told her at the time, 'Now, mamma, you must put your name on the back of the note because that is what keeps it alive.'

"Q. Didn't he say anything about what she should put on the back of the note? Just her name? A. Her name to show that the interest had been paid, that is what keeps the note alive."

The witness further testified that decedent so told his mother on two or three occasions; that he told witness that he had so told his mother on several occasions.

Whether or not the son's admonition to his mother to keep the note alive in the manner indicated was binding on the son, and also inured to the benefit of the daughter who claims the note by a gift made in 1912 or 1913, we need not decide. If such an admonition amounts to anything, it only authorized the holder of the note to *keep it alive*. It furnished no authority to resurrect it after the Statute of Limitations had run by then making endorsements of interest payments thereon. To show that the note was kept alive as the maker directed, it would be necessary to prove that endorsements of interest payments were made thereon while the note was still alive, in order to prevent the running of the statute. If the endorsements appearing on the note were made on the dates they bear, the note was kept alive, but there was no showing when the endorsements were made. The date of an endorsement does not prove itself.

The evidence shows that Amelia Arnold went to New York in 1912 to be near her two daughters, the claimant, and the witness Mrs. Pfeiffer. She lived in her own apartment in a New York hotel. Her son, Frederick, regularly sent her checks to pay her living expenses, maid service, and nurse hire when needed, from 1912 to the date of her death in 1926, and finally paid her funeral expenses. Mrs. Pfeiffer testified that she understood from her brother, Frederick, that he was reimbursed for one-half of such expenses by a near relative of their mother. The evidence is that claimant was in very moderate circum-

stances. The claim is that she acquired the $7000 note by gift from her mother in 1912 or 1913, yet, it is not shown that she ever talked to her brother about the note, or made any demand for its payment until she filed it as a claim against his estate in November, 1931. It is further shown that on May 6, 1921, claimant and her husband executed to her brother, Frederick W. Arnold, their promissory note for the sum of $2500 payable on demand with interest at the rate of six per cent per annum from date. It is further shown by the will of Frederick W. Arnold that claimant's husband was indebted to him for money advanced at various times and wholly or in part evidenced by promissory notes. It is somewhat difficult to understand why claimant, in moderate circumstances, would borrow money from her brother and execute her note therefor, if at the same time she had his valid promissory note in the principal sum of $7000 which she held for a period of nineteen years and never made any demand for its payment until after his death, although he was a rich man and amply able to pay the note at any time. Such transactions do not accord with ordinary human conduct.

For all of the reasons stated, our conclusion is that there is no substantial evidence in the record tending to show when the endorsements of payment of interest appearing on the note were made, or that any of them were made with the knowledge and consent of the maker of the note.

If we should take appellant's view and hold that the evidence tended to support her contentions, the final result would not be changed. The evidence was oral and, therefore, not conclusive. Its weight and credibility were questions to be determined by the trier of the facts. The court, sitting as a jury, determined these questions against appellant. Absent error, we are powerless to interfere.

The final contention is that respondent is estopped to invoke the Statute of Limitations as a defense to appellant's claim.

The rule of law by which this contention should be determined is well stated in 9 Ann. Cas. 775, as follows:

"It is a well settled rule that a defendant who has not expressly waived the defense of the Statute of Limitations may be estopped by his conduct from setting up the statute where, his conduct, though not fraudulent, has nevertheless induced the plaintiff to delay bringing suit until after the expiration of the statutory period."

There is no claim that respondent expressly agreed to waive the defense of the Statute of Limitations. The only thing deceased ever said to his mother about the note was to admonish her to keep it alive by endorsing her name on the back thereof to show that the interest was paid. Certainly an admonition to her to keep the note alive would not induce her to let it die. There is no evidence that deceased ever talked to claimant about the note. Mrs. Pfeiffer testified that on two different occasions deceased told her that he knew that his mother

had given the note to claimant; that it was all right, and that the note was worth more than when he gave it to his mother. There was no evidence that claimant knew that deceased had made these statements to her sister Mrs. Pfeiffer. Certainly these alleged statements of deceased could not and did not induce claimant to delay bringing suit on the note, when she had no knowledge that such statements had been made. The claim of estoppel is not supported by the evidence.

The judgment below should be affirmed. It is so ordered. All concur.