**Stanley J. GOODKIN and Jacob W. Reby, Appellants,**

v.

**8182 MARYLAND ASSOCIATES LIMITED PARTNERSHIP and Apex Clayton, Inc., Respondents.**

**No. ED 80616.**

Missouri Court of Appeals,
Eastern District,
Division Five.

July 9, 2002.

Robert C. Jones, Jones, Korum, Waltrip & Jones, Clayton, for appellants.

Neil H. Miller, Law Office of Neil H. Miller, P.C., Clayton, for respondents.

GLENN A. NORTON, Judge.

Stanley Goodkin and Jacob Reby ("Appellants") appeal the granting of summary judgment dismissing their petition for declaratory relief. They sought a declaration that they were entitled to limited partnership interests in 8182 Maryland Associates Limited Partnership ("Maryland"). Only Maryland was named in the original petition. Later, Appellants amended the petition, adding Maryland's general partner, Apex Clayton, Inc. ("Apex"), as a defendant. Apex and Maryland jointly filed a motion to dismiss and for summary judgment. Apex argued that the statute of limitations had run on the claims against it. Maryland argued that Apex was a necessary and indispensable party—without which, Appellants could not proceed against Maryland—because Apex, not Maryland, owns the interests Appellants seek. The trial court granted the motion. We affirm.

## I. BACKGROUND

The facts, construed where necessary most favorably to the Appellants, are as follows. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Maryland is a Missouri Limited Partnership, entered into by Apex, PS Maryland Avenue Associates ("PS–I") and others. Apex is the general partner in Maryland. PS–I owned a limited partner interest in Maryland. Appellants were general partners in PS–I.

Section 8.2 of Maryland's Limited Partnership Agreement requires that limited partners make capital contributions to Maryland upon written demand from the general partner, Apex. If a limited partner fails to pay all or any portion of a contribution when due, then it is considered in default. Apex has the option, under section 8.3.A of the Agreement, to purchase the interest of the defaulting limited partner upon written notification and to pay to the partnership the defaulting partner's outstanding contribution. "Upon the purchase of the Interest of a Defaulting Limited Partner, his interest in the Partnership shall terminate and he shall have no further rights in or obligations to the Partnership." Agreement Section 8.3.C.

The Agreement also imposes limitations on the assignment and transfer of a limited partner's interest in Maryland. Section 14.2 provides that "[n]o Limited Partner's interest or any fractional part thereof may be sold, assigned or transferred without the written consent of the General Partner and the Limited Partners having at least fifty-one percent (51%) or more [sic] of the interests in the Partnership."

In 1993, PS–I notified Maryland, through Apex, that it intended to assign portions of its limited partner interest in Maryland to Appellants. Apex notified the partners that it was issuing a capital call for contributions to the partnership. Appellants attempted to pay their pro rata share of the call based on the percentage of interest they would own under PS–I's proposed transfer. PS–I tendered only 80% of its pro rata share of the capital call. On July 19, 1993, Apex sent Appellants identical letters. The letter notified Ap-

pellants (1) that Apex and "a majority in interest of the limited partners" of Maryland declined to consent to PS–I's proposed transfer to Appellants and (2) that PS–I was in default under the Agreement and therefore "[t]oday, [Apex] exercised its option under [s]ection 8.3A of the Partnership Agreement to purchase the interest of PS[-]I, as Defaulting Limited Partner." Apex still owns the interests at issue.

On June 1, 1998, Appellants filed their petition for declaratory relief naming Maryland. Appellants alleged that Maryland withheld consent for PS–I's transfer to Appellants in bad faith. They also alleged that Apex purported to purchase PS–I's interest as a defaulting limited partner in an attempt to eliminate PS–I's and Appellants' participation in Maryland. Appellants sought a declaration that they owned the interests in Maryland. In the alternative, Appellants asked to be awarded the fair market value of their claimed interests.

After Maryland answered, Appellants sought leave to file an amended petition on November 11, 1998. The amended petition added Apex as a defendant and alleged that the "Defendants" unreasonably withheld consent for PS–I's proposed transfer, that Apex purported to exercise its buyout rights and that "Defendants" declared PS–I in default in order to eliminate PS–I and Appellants from Maryland. Maryland and Apex opposed the amendment, but the trial court granted leave on December 11, 1998.

Maryland and Apex jointly filed a motion to dismiss the amended petition and for summary judgment. The trial court granted summary judgment in favor of Maryland and Apex and against Appellants and dismissed the amended petition. The trial court did not articulate the reasons for its decision.

In the motion and on this appeal, Apex argues that the five-year statute of limitations began to run on the claims against it on July 19, 1993—the date of the letter notifying Appellants of the buyout—and barred the claims filed in November of 1998. It also contends that the amended pleading cannot relate back to the original filing. Maryland asserts that Apex was a necessary and indispensable party, without which, the claims against Maryland cannot proceed.

## II. DISCUSSION

The propriety of summary judgment is a question of law, and therefore, our review is *de novo*. *ITT*, 854 S.W.2d at 376. The criteria for determining the propriety of summary judgment on appeal are no different than that used at the trial level. *Id.* Although we view the record and construe all inferences favorably to the non-movant, facts set forth in support of the summary judgment motion are taken as true unless contradicted by the non-movant's response. *Id.* at 376, 382–83.

Maryland and Apex, as defendants, may establish a right to judgment by showing (1) facts that negate any one of the elements of Appellants' claims, (2) that Appellants cannot produce evidence sufficient to allow the trier of fact to find the existence of any one of their elements, or (3) "that there is no genuine dispute as to the existence of *each* of the facts necessary to support [Appellants'] properly-pleaded affirmative defense." *Id.* at 381 (emphasis in original). Once Maryland and Apex have met this burden, Appellants must show by reference to the record that "one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." *Id.* A "genuine issue" exists where the record contains competent materials that demonstrate

"two plausible, but contradictory, accounts of the essential facts." *Id.* at 382.

### A. Statute of Limitations

Everyone agrees that the five-year statute of limitations applies to this action. *See* 516.120 RSMo 2000.[1] A cause of action accrues and the statute of limitations begins to run "when the damage resulting therefrom is sustained and is capable of ascertainment." Section 516.100. Damages are "capable of ascertainment" when a plaintiff with a recognized legal theory of recovery sustains compensable damages. *See generally Wallace v. Helbig*, 963 S.W.2d 360 (Mo.App. E.D.1998).

Apex argues that Appellants' cause of action against it accrued on July 19, 1993 when Apex notified them of the buyout. Appellants contend that the July 19, 1993 letter did not start the limitations period because the buyout could not be completed until Apex obtained written consent of at least 51% of the ownership interest in Maryland under section 14.2 of the Agreement. Because that never happened, Appellants argue that they did not have a claim as of July 19, 1993.

The record demonstrates that Apex's action to acquire the interest of PS–I on July 19, 1993 was taken under section 8.3 of the Agreement, not under section 14.2 as Appellants' contend. As the general partner, Apex had the right under section 8.3 to purchase the interest of a defaulting limited partner. There were no conditions attending that action; once Apex notified the Appellants, the acquisition was complete. The written consent required under sec-

tion 14.2 for the transfer of a limited partner's interest simply did not apply to Apex's exercise of its rights as a general partner under section 8.3. There is no other plausible reading of the record. *See ITT*, 854 S.W.2d at 382.[2]

Any injury Appellants sustained as a result of Apex's buyout arose on July 19, 1993. Likewise, any claims Appellants have against Apex as a result of its refusal to consent to PS–I's proposed transfer also arose, at the latest, on July 19, 1993. By then, if not before, Appellants were aware of both Apex's buyout and the refusal to approve the transfer. The filing of Appellants' amended petition after July 19, 1998 is time-barred.

Point I is denied.

### B. Relation-back

Appellants contend that the relation-back rule should spare them from the statute of limitations. Apex argues that relation-back does not apply here, where Appellants attempted to add, not change, a party. We agree with Apex.

Rule 55.33(c) allows amended pleadings filed out of time to relate back to the original pleading in certain situations. Although this Rule may be used for more than merely correcting a misnomer, the failure to timely plead must have been caused by a mistake in selecting the proper party to sue. *Windscheffel v. Benoit*, 646 S.W.2d 354, 357 (Mo. banc 1983). That is, the plaintiff must have sued the wrong party. *Windscheffel*, 646 S.W.2d at

---

**1.** Unless otherwise noted, all statutory references are to RSMo 2000, and all rule references are to the Missouri Supreme Court Rules (2001).

**2.** Appellants' argument is not only contrary to the record, it is self-defeating. The condition Appellants claim was necessary to the accrual of their cause of action against Apex *never*

happened. Yet, they asserted claims against Apex in November of 1998. If the condition still had not occurred by that time, then they still did not have a ripe cause of action. Appellants' claim either accrued on July 19, 1993 or it never did. By their own admission, they are either too late or too early.

357; *see also Hoey v. St. Luke's Episcopal Presbyterian Hosp.,* 713 S.W.2d 636, 638 (Mo.App. E.D.1986). "Rule 55.33(c) is a remedy for mistakes in *identity,* and the remedy is a *change* in party." *Windscheffel,* 646 S.W.2d at 357 (emphasis in original). Therefore, the Rule does not apply if the plaintiff wants to add a party to the suit. *Id.* A mistake in failing to add a party defendant does not trigger relation-back. *State ex rel. Hilker v. Sweeney,* 877 S.W.2d 624, 628 (Mo. banc 1994).

Although characterized in their brief as a "misnomer" and a mistake in "naming the wrong party," Appellants are not really claiming that Maryland is the wrong party or that this is a case of mistaken identity. When they amended the petition, Appellants did not seek to substitute Apex for Maryland. Maryland was left in the suit. Moreover, Appellants knew when they filed the original pleading that Apex was Maryland's general partner. Their mistake was not in failing to identify the correct party, but in failing to add Apex in time. This does not trigger relation-back. *See Sweeney,* 877 S.W.2d at 628.

Since Appellants cannot show that naming Maryland was a mistake or that their amended petition sought to change defendants to correct a mistake, it does not matter whether Apex had notice of the claims before the statute ran or whether it would suffer prejudice by allowing relation-back. *See Smith v. Overhead Door Corp.,* 859 S.W.2d 151, 153 (Mo.App. W.D. 1993); *see also Sweeney,* 877 S.W.2d at 628.

The cases relied on by Appellants are distinguishable and inapplicable to this case. In *Home Building Corporation v. Ventura Corporation,* relation-back was allowed where the plaintiff sought to change the name of the defendant after a mistake regarding the defendant's corporate status. 568 S.W.2d 769, 771 (Mo. banc 1978). Here, Appellants did not attempt to change the defendant, and there was no mistake about Maryland's corporate status.

Similarly, in *Want v. Leve,* the named defendant lulled the plaintiff into believing that the defendant was a corporation and was the proper defendant. 574 S.W.2d 700, 715 (Mo.App.1978). Eventually, the plaintiff discovered that the defendant was actually a partnership and amended the petition, naming each partner and the originally named defendant. *Id.* at 705–06. There, the failure to name the partners in the original pleading was based on a mistake in the defendant's legal identity. Here, Appellants admit that they knew Maryland's legal structure and that Apex was its general partner. There was no mistake.

Under these circumstances, the amended petition does not relate back to the original petition.

Point II is denied.

## B. Necessary and Indispensable Party

■ Maryland claims that Apex is a necessary and indispensable party under Rule 52.04 and the entire suit should be dismissed. Maryland asserts that Apex is necessary and indispensable because (1) Apex, not Maryland, owns the limited partnership interests that Appellants want transferred to them and (2) Apex, not Maryland, committed all of the acts about which Appellants complain.

Appellants do not dispute these facts, but claim instead that under section 359.081 [3] they need only name the limited

---

**3.** That statute provides that "[a] limited part-    nership shall, in the partnership name, sue

partnership and not its general partner. Whether, theoretically, Maryland can be required to defend against claims in the partnership name does not answer the question. We must consider, under Rule 52.04, whether Apex is necessary to the adjudication of the particular claims and the particular relief sought by Appellants here.

Rule 52.04(a) provides that a person shall be joined in an action if:

(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Such a person is a necessary party. *Kingsley v. Burack*, 536 S.W.2d 7, 12 (Mo. banc 1976).

Appellants want the interests in Maryland that Apex now holds. No one disputes this. Maryland cannot give the Appellants interests in the partnership that it does not own. Nor could Maryland be ordered to pay Appellants damages. Appellants have failed to show in the record any evidence disputing that Apex, not Maryland, committed the acts about which Appellants complain.

The next step under Rule 52.04 is to determine whether it is feasible to join the necessary party. We have already concluded that Apex is beyond reach under the statute of limitations. Therefore, it is not feasible to join Apex in this lawsuit.

If a party is necessary but unreachable, then the court must determine whether "in equity and good conscience" the action either should proceed without them or should be dismissed. Rule 52.04(b). In making that determination, the court considers:

(i) to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; (ii) the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (iii) whether a judgment rendered in the person's absence will be adequate; and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Rule 52.04(b).

No adequate and equitable judgment could be rendered against Maryland that would give Appellants what they seek because Apex has what Appellants want. Also, proceeding in Apex's absence might cause prejudice to Apex. Under the Agreement, Apex can be held responsible to the partnership and the other limited partners for its actions if those actions were taken in bad faith, as Appellants allege they were taken here. Therefore, Apex may be prejudiced in future proceedings amongst the partnership regarding its liability for these acts if it is not able in this suit to defend its actions. Nothing in the record suggests any way to fashion the judgment to lessen or avoid this prejudice. Finally, although it appears that Appellants have no other remedy if this action is dismissed, this factor does not persuade us to allow the action to go forward given that Appellants' failure to timely bring the claim against Apex has prevented joinder.

and be sued, complain and defend in any court of law or equity." Section 359.081.

Apex is necessary and indispensable. Because Apex is absent, we find that in equity and good conscience the action should be dismissed.

Point III is denied.

## III. CONCLUSION

The statute of limitations bars the claims against Apex and the amended pleading does not relate back to the original filing. Therefore, summary judgment in Apex's favor is proper. Because Apex is necessary and indispensable to this action, the failure to join Apex warrants summary judgment in Maryland's favor.

The judgment is affirmed.

JAMES R. DOWD, C.J. and ROBERT G. DOWD, JR., J. concurring.

Gwenda R. Robinson, Asst. Public Defender, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, MO, for respondent.

Before SHERRI B. SULLIVAN, P.J., LAWRENCE G. CRAHAN, J., and LAWRENCE E. MOONEY, J.