David Wayne HUSKEY, Plaintiff-Appellant/Respondent,

v.

QUEEN CITY ROOFING & CONTRACTING CO., Defendant-Respondent/Cross-Appellant.

No. SD 34666 and SD 34682

Missouri Court of Appeals,
Southern District,
Division One.

Filed: Aug. 8, 2017

TODD C. WERTS, Columbia, MO, for Appellant/Respondent.

PAULA S. GREEN, Springfield, MO, and RICHARD B. MALTBY, Gainesville, FL, for Respondent/Cross-Appellant.

**612**

DON E. BURRELL, J.

 David Wayne Huskey ("Workman") appeals a summary judgment ("the judgment") granted in favor of Queen City Roofing & Contracting Company ("Contractor") on Count 3 of Workman's first amended petition ("the petition").[1] The petition claims that Contractor wrongly failed to pay Workman the prevailing wage on public projects he worked on in 2011 and 2012.[2] *See* sections 290.210 to 290.340, commonly known as the Missouri Prevailing Wage Act ("the Act").[3] *Bonney v. Environmental Eng'g, Inc.*, 224 S.W.3d 109, 112-13 (Mo. App. S.D. 2007).

Workman's first two points claim the trial court erred in granting summary judgment because: (1) material questions of fact existed "in that there is competent evidence in the record" supporting the proposition "that [Contractor] should not get the full credit that it claims towards its prevailing wage obligations" ("PWO") based upon contributions it made to a benefit fund established by Contractor; and (2) the trial "[c]ourt relied on letters from the Missouri Division of Labor Standards [ ("DLS") ] declining to take action against [Contractor as] those letter[s] are not competent evidence."

Workman's final point contends that sustaining Contractor's objections to "several paragraphs" in Workman's statement of additional uncontroverted material facts ("the SAUMF") was error because the additional paragraphs "were relevant to the issues in this case and Rule 74.04(c)(2) does not strictly prohibit including more than one evidentiary fact within a single 'numbered paragraph.'"

Finding Workman's first point both meritorious and dispositive, we reverse the judgment and have no need to consider his other points.

### *Preliminary Issue—Finality of the Judgment*

 Generally, "[a] final judgment is a prerequisite to appellate review[,]" *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012), and "[t]he grant of a summary judgment is a final, appealable judgment when it disposes of all of the parties and issues." *State ex rel. St. Charles Cty. v. Cunningham*, 401 S.W.3d 493, 496 (Mo. banc 2013). Because the petition included three counts, and Contractor's motion was for a partial summary judgment only as to Count 3, we ordered Plaintiff to show cause "why the appeal

---

1. Contractor has filed a cross-appeal that attempts to challenge the trial court's reliance on certain parts of the summary judgment record. In doing so, Contractor does not claim that it was prejudiced by the judgment. In fact, Contractor seeks "an order affirm[ing] the judgment in its *entirety*." (Emphasis added.) We consider *sua sponte* a party's standing to appeal. *Four Seasons Racquet & Country Club Prop. Owners Ass'n v. Abrams*, 858 S.W.2d 835, 836 (Mo. App. S.D. 1993). "Fundamental to the right of appeal is that the party be aggrieved by the judgment from which he or she appeals." *Bydalek v. Brines*, 29 S.W.3d 848, 852 (Mo. App. S.D. 2000); *see also* section 512.020, RSMo. 2016. Because Contractor cannot be aggrieved by a judgment entirely in its favor, its cross-appeal is dismissed, and its motion for leave to file a

late notice of appeal is moot. *Cf. Wright v. Rankin*, 109 S.W.3d 696, 699-700 (Mo. App. S.D. 2003) (dismissing the defendants' appeal that challenged particular findings by the trial court but did not challenge the judgment itself, which "was, in effect, a judgment for defendants").

2. The petition also made allegations supporting a potential class action, but the trial court has not ruled on Workman's request to proceed as the representative of a class of similarly situated workmen. *See* Rule 52.08(c)(1). All rule references are to Missouri Court Rules (2017).

3. Unless otherwise indicated, all statutory references are to RSMo 2000.

herein should not be dismissed as an appeal that is not taken from a final judgment."

■■■ After the trial court granted Contractor's motion for partial summary judgment, Workman filed a notice of "his dismissal without prejudice, of Counts [1], [2], and his Class Action Allegations" ("the dismissal notice"). In a case not tried to a jury, a plaintiff's dismissal "without order of the court" must occur "prior to the introduction of evidence at the trial." Rule 67.02(a)(2). *Cf. Cunningham*, 401 S.W.3d at 496 (where the plaintiff was not permitted to dismiss its lawsuit after "[t]he disputed issues between [the parties] were litigated fully through summary judgment"). "For purposes of the voluntary dismissal rule under Rule 67.02, a 'hearing on a motion for summary judgment is a trial before the court without a jury.'" *Id.* (quotation omitted).

In *Cunningham*, the plaintiff's motion to dismiss the case came after an appellate court *reversal* of a summary judgment in the plaintiff's favor, which prompted a concern on the part of our high court that the dismissal might negate what would otherwise have been resolved as the law of the case.[4] *Id.* at 495, 497.

Workman's brief correctly distinguishes *Cunningham*, and Contractor concurs with Workman's argument that he "was authorized under Rule 67.02 to dismiss the counts of his petition not at issue in the trial court's summary judgment ruling[,]" and his dismissal "converted that ruling to a final judgment from which an appeal may lie." Because Contractor's motion for partial summary judgment did not seek judgment beyond a resolution of Count 3, it cannot be said that a trial had occurred on counts 1 and 2 for purposes of Rule 67.02(a)(2). We therefore agree that Workman was permitted to dismiss counts 1 and 2 under Rule 67.02(a), and the partial summary judgment (hereinafter referred to as "the summary judgment") then became a final judgment "because no other claims or parties remain[ed] pending." *Stewart v. Liberty Mut. Fire Ins. Co.*, 349 S.W.3d 381, 384-85 (Mo. App. W.D. 2011). Having satisfied ourselves that we have appellate jurisdiction, we now proceed to a substantive analysis of Workman's appeal.

### Applicable Principles of Review and Governing Law

"The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo.*" *Goerlitz v. City of Maryville*, 333 S.W.3d

---

4. *Cunningham* was one in a series of appeals that resulted from an action brought by St. Charles County against Laclede Gas Company over which party would bear the cost of relocating some of Laclede Gas Company's gas lines. *Id.* at 494. In ruling cross-motions for summary judgment, the trial court had entered a judgment in favor of the county. *Id.* After taking the case on transfer, our high court reversed the judgment and remanded the case because "requiring [Laclede Gas Company] to relocate its gas lines without compensation [to accommodate the county's road] amount[ed] to an unconstitutional taking of private property." *St. Charles Cty. v. Laclede Gas Co.*, 356 S.W.3d 137, 138-39

(Mo. banc 2011). Upon remand, the trial court denied the county's motion to voluntarily dismiss its action pursuant to Rule 67.02. *Cunningham*, 401 S.W.3d at 494. The county filed a motion for a writ of prohibition that would prevent the trial court from retaining any jurisdiction over the case. *Id.* After having initially issued a preliminary writ, our supreme court quashed the writ, holding that because the dismissal was not requested prior to the introduction of evidence at trial (via the resolution of the case on cross-motions for summary judgment), allowing the dismissal at that point would "frustrate the purpose of Rule 67.02 [and] imped[e] the orderly administration of justice." *Id.* at 496.

450, 452 (Mo. banc 2011). We view the summary judgment record in the light most favorable to Workman, the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376, 382 (Mo. banc 1993). "A summary judgment can only be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *McLallen v. Tillman*, 386 S.W.3d 837, 839 (Mo. App. S.D. 2012).

It is

the policy of the state of Missouri that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work.

Section 290.220. "The public body awarding the contract shall cause to be inserted in the contract a stipulation to the effect that not less than the prevailing hourly rate of wages shall be paid to all workmen performing work under the contract." Section 290.250.1, RSMo 2016. "Any workman employed by the contractor ... who shall be paid for his services in a sum less than the stipulated rates for work done under the contract, shall have a right of action[.]" Section 290.300.

At the time of Workman's employment by Contractor, section 290.210(5) provided: [5]

"Prevailing hourly rate of wages" means the wages paid generally, in the locality in which the public works is being performed, to workmen engaged in work of a similar character including the basic hourly rate of pay and the amount of the rate of contributions irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan or program, and the amount of the rate of costs to the contractor or subcontractor which may be reasonably anticipated in providing benefits to workmen and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the workmen affected, for medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, for unemployment benefits, life insurance, disability and sickness insurance, accident insurance, for vacation and holiday pay, for defraying costs of apprenticeship or other similar programs, or for other bona fide fringe benefits, but only where the contractor or subcontractor is not required by other federal or state law to provide any of the benefits; provided, that the obligation of a contractor or subcontractor to make payment in accordance with the prevailing wage determinations of the department, insofar as sections 290.210 to 290.340 are concerned, may be discharged by the making of payments in cash, by the making of irrevocable contributions to trustees or third persons as provided herein, by the assumption of an enforceable commitment to bear the costs of a plan or program as provided herein, or any combination thereof, where the aggregate of such payments, contributions and costs is not less than the rate of pay plus the other amounts as provided herein.

---

5. This section was amended in 2013 so as to renumber this subsection, add punctuation at the end of the subsection, and remove language relevant to contributions made to a trustee or third person.

Section 290.210(5); *see also* section 290.210(2) (which identifies the referenced "department" as the Department of Labor and Industrial Relations).

### The Relevant Undisputed Material Facts

Count 3 of the petition claims, *inter alia*, that Contractor's "cash payment rate was not sufficient to meet the prevailing wage requirement" for Workman on particular jobs listed as "Prevailing Wage Work." Contractor's answer denied these allegations. The petition went on to claim that even if contributions made by Contractor to an entity known as "Queen City Roofing & Contracting Co. Voluntary Employee Beneficiary Association, Inc." ("VEBA") were

> equal to the difference between the required prevailing wage rate and the hourly cash rate actually paid to the employees, [Contractor] is in violation of the prevailing wage law because the payments to [VEBA] do not qualify as a bona fide fringe benefit, and therefore cannot be used by [Contractor] to claim it paid the required prevailing wage.

Contractor's answer denied these allegations.

Contractor's motion for summary judgment and "**STATEMENT OF UNCONTROVERTED MATERIAL FACTS**" was filed in October 2015.[6] After the parties finished their responses and additions as permitted by Rule 74.04, and the trial court had ruled various objections and permitted Contractor to respond where its objections had been denied, the following became the relevant undisputed material facts ("SUMF") upon which the trial court could base a summary judgment.[7]

Contractor "is a construction company specializing in roofing and sheet metal installation and service[,]" and its "workforce is divided into three departments: roofing, sheet metal, and office staff." "VEBA is a plan or program that provides some fringe benefits to employees of [Contractor]." (Emphasis omitted.) "VEBA is governed by a board of three trustees[,] ... [o]ne of the trustees is appointed by" Contractor, and "[t]he other two trustees are elected by [VEBA] membership." "The bylaws allow [VEBA] Trustees to terminate [VEBA] at any time." "Every employee [of Contractor] is a member of [VEBA] from his or her first day of employment." "No employee directly contributes to [VEBA,]" and Contractor "makes contributions to [VEBA] on behalf of each employee." Contractor contributes "$3.75 per hour for every hour its roofing and sheet metal employees work[,]" and "$3.75 per hour worked.... based on 40 hours per week" for office staff.

Contractor "'sends' [VEBA] a detailed invoice each year for" expenses classified as "'administrative overhead.'" VEBA "'reimburses its proportionate share of [Contractor's] costs for such facilities and

---

6. A discrepancy in the record on appeal concerning the exact dates on which the SUMF and motion for summary judgment were filed is not material to our analysis.

7. We do not include uncontroverted material facts regarding Workman's wage rate, earnings, and VEBA contributions made on behalf of Workman by Contractor because Workman states in his brief that "[t]he question in this case is not about the amount of prevailing wages *earned* by [Workman] and employees like him. Nor is it whether [Contractor] mathematically *tendered* the correct amount of cash payments and contributions to [VEBA]." Contrary to the position taken in Contractor's briefing, we do not construe Workman's framing of the issue as a concession that he had no damages as he goes on in the same portion of his brief to challenge whether he "actually *received* the value of the statutorily prescribed prevailing wages in the form of bona fide fringe benefits."

employees pursuant to an [unwritten] expense reimbursement agreement which is subject to review on an annual basis[.]' " The expense reimbursement agreement is not "communicated to the rank-and-file VEBA members."

Contractor took a credit for the "standard VEBA contribution" against the prevailing wage rate. Contractor also took "a credit for 5.8% of the gross wages paid during the week based upon [Contractor's] 401k retirement plan." "In addition, on prevailing wage jobs, [Contractor] contributed an additional amount to [VEBA] in order to take a credit towards its [PWO]." The additional amount to be contributed to VEBA would be the "[PWO that] was not already covered by the employees [sic] base hourly wage, 401k calculated amount, and standard VEBA contribution."

Workman was "a sheet metal worker who started his employment" in April 2011, and he last worked for Contractor in August 2012.[8] Workman "never performed any work on any Missouri public works projects during the first four months of his employment" for Contractor. Workman "recorded at least some prevailing wage work in 23 of the 69 total weeks" of his employment by Contractor.

Contractor's "employees are supposed to be eligible to receive insurance benefits from [VEBA] after [four] months of continuous employment." Insurance premiums were paid from VEBA on Workman's behalf for health, life, accidental death and dismemberment, and dental plans. Workman "was also eligible for as much as $1,500 per year for medical reimbursements of qualified medical expenses not covered by insurance."

"[A]s a sheet metal worker who started his employment in 2011[,]" Workman "was

not entitled to dependent insurance benefits" from Contractor. For "members" of VEBA who did have spouses or "whole" families enrolled in insurance plans through Contractor, higher premiums were paid from VEBA.

The trial court found

as a matter of law that VEBA complied with the [Act]. The Court further finds that in its asserted claim in Count [3], [Workman] is seeking to have this Court interpret Missouri law as it has not been previously interpreted. [The summary judgment motion] is granted. Judgment on Count [3] is entered in favor of [Contractor] and against [Workman].

This appeal timely followed.

## Analysis

### *Point 1—Whether Standard Wages and 401k Contributions, Plus VEBA, Satisfies Contractor's PWO*

■ Workman's first point contends that summary judgment is precluded because unspecified "material questions of fact" exist. The point improperly fails to identify a specific material fact in question. *See* Rule 84.04(d)(1)(C). Despite that defect, we exercise our discretion to review Point 1 *ex gratia* because the remainder of the point indicates that the challenged material fact is the "credit that [Contractor] claims towards its [PWO]" based on its contributions to VEBA, and it is clear that Contractor understood what was being challenged as the corresponding point in its brief asserts that "VEBA complies with the [Act]." *See Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017) (appellate court has "discretion to review non-compli-

---

8. The parties dispute whether (and, if so, how) Workman ceased working for Contrac-

tor for approximately three weeks in May 2012.

ant briefs ex gratia where the argument is readily understandable").[9]

" 'Prevailing hourly rate of wages' is a term of art specifically defined by Section 290.210(5)[.]" *Bonney v. Envtl. Eng'g, Inc.*, 224 S.W.3d 109, 121 (Mo. App. S.D. 2007). Under section 290.210(5), "any combination" of one of the following three things may be included in a contractor's PWO: (1) "payments in cash"; (2) "irrevocable contributions to trustees or third persons as provided" in the subsection for a "fund, plan or program" (for convenience, "plan contributions"); or (3) "the rate of costs . . . reasonably anticipated in providing benefits" that are "not required by other federal or state law" but are "pursuant to an enforceable commitment to carry out a financially responsible plan or program which was communicated in writing to the workmen affected" ("reasonable benefit rates"). Section 290.210(5).

"[A]ll facts must come into the summary judgment record in the manner required by Rule 74.04(c)(1) and (2), that is, in the form of a pleading containing separate separately numbered paragraphs and a response addressed to those numbered paragraphs." *Syngenta Crop Prot., Inc. v. Outdoor Equip. Co.*, 241 S.W.3d 425, 429 (Mo. App. E.D. 2007) (quotation omitted). Exhibits like affidavits, depositions, and other documents may provide evidentiary support for the asserted material fact, but those items are not themselves material facts. *See* Rule 74.04(c)(1) (the separately numbered material facts are to include "specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts"); *cf. Custer v. Wal-Mart Stores East I, LP*, 492 S.W.3d 212, 215-16 (Mo. App. S.D. 2016) (setting forth

deposition testimony as purported material facts does not satisfy Rule 74.04; such is not a statement of material facts, and doing so simply forced the opponent into a "useless exercise" of denying or admitting that the deposition was quoted accurately). An attempt to assert additional material facts when there is "no opportunity to respond in accordance with the rules" is given no weight. *Syngenta*, 241 S.W.3d at 429.

Here, Contractor does not assert that VEBA represented "cash payments" for the "basic hourly rate of pay"—the first-listed means in section 290.210(5) to satisfy Contractor's PWO. Rather, Contractor contended in the summary judgment motion that Workman's "theories for claiming [that VEBA] is not a valid fringe benefit plan or program under [the Act] are not recognized by law." Contractor then asserted that Count 3 of the petition "fails because the evidence is undisputed that [VEBA] complies with the [Act]." This conclusory assertion simply assumes—without demonstrating—that VEBA could be included in Contractor's PWO as one of the other two means by which a contractor's PWO may be satisfied.

Contractor did not assert in the SUMF that contributions to VEBA were irrevocable, nor did it state other uncontroverted material facts that would demonstrate, as a matter of law, that the contributions to VEBA were irrevocable. Additionally, Workman's contributions to the SUMF did not claim that VEBA contributions were irrevocable nor state other facts that would lead to such a conclusion.

In its brief, Contractor claims that Workman "concedes that [Contractor] has no control over the trust funds once contri-

---

9. We limit our *ex gratia* review to whether the admitted uncontroverted material facts demonstrate that VEBA complies with the Act. We

do not extend it to consider the significance of additional "[d]ispute[s] of fact" asserted only in the argument section of Workman's brief.

butions are made[,]" but, it does not cite the SUMF in support of the claim. In fact, it fails to make *any* citation to the record in support of the claim, a violation of Rule 84.04(e).

██ Contractor's brief also argues that "there is no evidence that [Contractor] controls decisions to make payments from [VEBA] to [Contractor]." This argument fails for two reasons. First, reliance on disputable inferences does not support summary judgment. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 382 ("if the movant requires an inference to establish his right to judgment as a matter of law, and the evidence reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists and the movant's prima facie showing fails"). Second, the "facts" [10] giving rise to the argued inferences are purportedly to be found in the VEBA bylaws and other exhibits—they are not available to support a summary judgment because they are not in the SUMF. *Cf. Custer*, 492 S.W.3d at 215-16.

Further, an absence of proof that Contractor currently controls VEBA's decisions about payments going back to Contractor or that Contractor had not yet revoked VEBA funds would not prove that Contractor is unable to revoke contributions to VEBA either directly or in a manner that could be deemed to have revoked such contributions.

Moreover, as to the third means of satisfying Contractor's PWO—via reasonable benefit rates paid to VEBA—Contractor did not state as an uncontroverted material fact in the SUMF that VEBA included reasonably anticipated rates as a part of "the assumption of an enforceable commit-ment to bear the costs of a plan or program" that was "communicated in writing to the workmen affected[.]" Section 290.210(5). Contractor argues in its brief that "[t]here is no such requirement that a contribution plan be communicated in writing[,]" and it goes on to argue allegations of fact and matters in exhibits it offered in response to the SAUMF after the trial court ruled on Contractor's objections to the SAUMF.[11]

While Contractor was permitted additional time "to respond to [Workman's SAUMF]," the objections to which were denied, Contractor's allegations and exhibits do not constitute uncontroverted material facts. *Cf. Custer*, 492 S.W.3d at 215-16. Further, Workman did not fill the gap by asserting as an uncontroverted material fact that Contractor's VEBA contributions included amounts for reasonable benefit rates as assumed in an enforceable commitment to bear the costs of a plan that was communicated in writing to the workmen affected.

As a result, based upon the uncontroverted material facts, we cannot find as a matter of law that VEBA contributions may be included in Contractor's PWO as qualifying plan contributions or reasonable benefit rates. Point 1 is granted. The judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

MARY W. SHEFFIELD, P.J.—
CONCURS

GARY W. LYNCH, J.—CONCURS

---

10. Contractor argues its view of the trustees on the board of VEBA and that VEBA funds had not previously been revoked or recalled by Contractor.

11. For example, Contractor cites information contained in an affidavit by Contractor's president and chairman of the board, as well as a letter from DLS.